UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shanya Smith, Individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>  vs.<br><br><br>Antech Diagnostics, Inc.<br><br>          Defendant. | Case No. _____<br><br><br><br>**CLASS ACTION**<br><br>**COMPLAINT** |

## CLASS ACTION COMPLAINT

Now comes Plaintiff, Shanya Smith, ("Plaintiff"), on behalf of herself and all others similarly situated, through Counsel, and pursuant to 740 ILCS § 14/1 *et seq.*, and Fed. R. Civ. P. 23, against Defendant, Antech Diagnostics, Inc., ("Antech" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collections, obtainments, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric identifiers and/or biometric information (collectively referred to herein as "biometric data" and/or "biometrics"). Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. At all relevant times, Defendant, Antech Diagnostics, Inc., operated a nationwide network of integrated veterinary diagnostic laboratories.

2. Plaintiff worked at Antech's facility located at 2601 West 22nd Street, Oak Brook, Illinois 60523 and had her biometric information processed via a thumbprint scan as part of the time clock procedure for timekeeping and payroll purposes.

3. As part of the onboarding process and/or being permitted to continue her employment at Antech, Plaintiff was required when clocking into and out of her daily shift, including any lunch breaks, to have her thumbprint scanned.

4. In these instances, Antech utilizes a biometric terminal and biometric scanning software to collect the thumbprint scans of their employees, including Plaintiff.

5. Antech employees, including Plaintiff, are required to undergo this biometric authentication each shift in order to receive compensation.

6. Antech collects, stores, possesses, and otherwise obtains, uses and disseminates its employees' biometric data.

7. Thumbprint scans are unique, permanent biometric identifiers associated with each user that cannot be changed or replaced if stolen or compromised. Antech's unlawful collection, obtainment, storage, and use of its users' biometric data exposes them to serious and irreversible privacy risks. For example, if Antech's database containing thumbprint scans or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed, Antech's employees have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

8. The Illinois legislature enacted BIPA to protect residents' privacy interests in their biometric data. *See Heard v. Becton, Dickinson & Co*., 440 F. Supp. 3d 960, 963 (N.D. Ill. 2020), citing *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1199 (2019).

9. Courts analogize an individual's privacy interest in their unique biometric data to their interest in protecting their private domain from invasion, such as from trespass. *See Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020), as amended on denial of reh'g and reh'g *en banc*, (June 30, 2020) and opinion amended on denial of reh'g *en banc*, 2020 U.S. App. LEXIS 20468, 2020 WL 6534581 (7th Cir. 2020).

10. In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which has been selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including thumb-scan technologies at grocery stores, gas stations, and school cafeterias" (740 ILCS 14/5(b)) – the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that a private entity like Antech may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of her or her biometric identifiers or information; and (4) publishes publicly-available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a)-(b).

11. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id*.

12. Specifically, upon information and belief, Antech has collected and stored the thumbprint scan of each employee who was required to use the thumbprint scanning technology as part of Antech's timeclock procedure. Each thumbprint scan that Antech extracts is unique to a particular individual in the same way that facial geometry or voiceprint uniquely identifies a particular individual.

13. Antech is a "private entity" as that term is broadly defined by BIPA and Antech is subject to all requirements of BIPA. *See* 740 ILCS § 14/10.

## JURISDICTION AND VENUE

14. This is a Class Action Complaint for violations of the Illinois Biometric Information Privacy Act (740 ILCS 14/1 et seq.) brought pursuant to Fed. R. Civ. P. 23 seeking statutory and actual damages.

15. Venue is proper in this Court because a substantial amount of the acts and omissions giving rise to this Action occurred within this judicial district.

16. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Plaintiff and the proposed class members are all residents of Illinois, Antech is domiciled in California, and the amount in controversy exceeds $75,000.

17. This Court has jurisdiction over this dispute pursuant to the Class Action Fairness Act ("CAFA") because the prospective class includes over 100 people and the amount in controversy exceeds $5,000,000.

18. At all relevant times, Plaintiff and the proposed Class are residents of the state of Illinois and the violations of BIPA as detailed herein occurred while Plaintiff and the proposed Class were located in Illinois.

19. At all relevant times, Antech has deliberately availed itself to conducting business with and employing Illinois residents.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

20. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

21. Plaintiff worked at Antech's facility located at 2601 West 22nd Street, Oak Brook, Illinois 60523.

22. As part of the onboarding process and/or being permitted to continue her employment at Antech, Plaintiff was required when clocking into and out of her daily shift, including any lunch breaks, to have her thumbprint scanned.

23. In these instances, Antech utilized a biometric terminal and scanning software to collect the thumbprint of Plaintiff.

24. Antech employees, including Plaintiff, are required to undergo this biometric authentication in order to perform their work for Antech and to get compensation.

25. In other words, Antech collected and retained biometric information for the purpose of verifying Plaintiff's identity as an employee.

26. At all relevant times, Antech had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information when the initial purpose for collecting or obtaining such biometric information has been satisfied or within 3 years of the individual's last interaction with Antech, whichever occurs first.

27. Ostensibly, the purpose of Antech's collection of Plaintiff's thumbprint scans was to verify Plaintiff's identity for the purpose of punching her in or punching her out of Antech's timekeeping system.

28. As such, Plaintiff's thumbprint scans should have been permanently destroyed by Antech following each time punch and at the conclusion of Plaintiff's employment.

29. However, Antech failed to permanently destroy Plaintiff's thumbprint scans following each time punch or at the conclusion of Plaintiff's employment.

30. As such, Antech's retention of Plaintiff's biometric information was unlawful and in violation of 740 ILCS § 14/15(a).

31. Plaintiff was never informed in writing that Antech was collecting or storing her biometric information.

32. Instead, Plaintiff was simply instructed to input and allow her thumbprint to be scanned as part of her overall onboarding and continual time sheet verification for Antech

33. In fact, Antech made no mention of biometric information, collection of biometric information, or storage of biometric information to Plaintiff.

34. Moreover, Antech did not inform Plaintiff in writing of the specific purpose and length of term for which her biometric information was being collected, stored, and used.

35. Antech collected, stored, and used Plaintiff's biometric information without ever receiving a written release executed by Plaintiff which would consent to or authorize Antech to do the same.

36. Antech collected, stored, and used Plaintiff's biometric information without ever receiving Plaintiff's informed consent.

37. Additionally, Antech disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric information (1) without Plaintiff's consent; (2) without Plaintiff's authorization to complete a financial transaction requested or authorized by Plaintiff; (3) without being required

by State or federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

38. Upon information and belief, Antech utilizes numerous third party "Service Providers", all of which have had Plaintiff's biometric information disclosed, redisclosed or otherwise disseminated to them via their role as Service Providers assisting Antech with its identity verification services.

39. Antech's collection and retention of biometric information as described herein is not unique to Plaintiff and is instead part of Antech's policies and procedures which Antech applies to all of its hourly employees, including the Class Members.

## RULE 23 CLASS DEFINITIONS AND ALLEGATIONS

40. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

41. Plaintiff brings Claims for Relief in violation of BIPA as a class action under Rule 23(a), (b)(2) and (b)(3). Plaintiff brings these claims on behalf of herself and all members of the following Rule 23 Class:

> **All individuals who had their biometric information collected by Antech in Illinois at any point in the five (5) years preceding the filing of this Complaint.**

42. In the alternative, and for the convenience of this Court and the parties, Plaintiff may seek to certify other subclasses at the time the motion for class certification is filed.

43. **Numerosity (Rule 23(a)(1))**. The Class Members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that there are more than 1,000 people who satisfy the definition of the Class.

44. **Existence of Common Questions of Law and Fact (Rule 23(a)(2))**. Common questions of law and fact exist as to Plaintiff and the Class Members including, but not limited to, the following:

    a.    Whether Antech possessed Plaintiff's and the Class Members' biometric identifiers or biometric information without first developing a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with Antech, whichever occurs first.

    b.    Whether Antech collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's and the Class Members' biometric identifiers or biometric information, without first: (1) informing Plaintiff and the Class Members in writing that a biometric identifier or biometric information is being collected or stored; (2) informing Plaintiff and the Class Members in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used; and (3) receiving a written release executed by Plaintiff and the Class Members

    c.    Whether Antech disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class Members' biometric identifiers or biometric information (1) without Plaintiff's and the Class Members' consent; (2) without Plaintiff's and the Class Members' authorization to complete a financial transaction requested or authorized by Plaintiff and the Class Members; (3) without being required by State or federal law or municipal ordinance; or (4) without being required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

d. The damages sustained and the proper monetary amounts recoverable by Plaintiff and the Class Members.

45. **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like the Class Members, had her biometric identifiers and biometric information collected, retained or otherwise possessed by Antech without Antech's adherence to the requirements of BIPA as detailed herein.

46. **Adequacy (Rule 23(a)(4))**. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in complex class actions.

47. **Injunctive and Declaratory Relief (Rule 23(b)(2))**. Class certification of the Rule 23 claims is appropriate under Rule 23(b)(2) because Antech acted or refused to act on grounds generally applicable to the Class Members, making appropriate declaratory relief with respect to the Class Members as a whole.

48. **Predominance and Superiority of Class Action (Rule 23(b)(3))**. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to the Class Members predominate over questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Antech's common and uniform policies and practices illegally deprived Plaintiff and the Class Members of the privacy protections which BIPA seeks to ensure; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual Class Members are small compared to the expense and burden of individual

prosecution. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Antech's practices.

49. Plaintiff intends to send notice to all Class Members to the extent required by Fed. R. Civ. P. 23.

## COUNT ONE: VIOLATION OF 740 ILCS § 14/15(a)

50. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

51. A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines. 740 ILCS § 14/15(a).

52. As part of the onboarding process and/or being permitted to continue their employment at Antech, Plaintiff and the Class Members were required when clocking into and out of their daily shift, including any lunch breaks, to have their thumbprint scanned.

53. At the time of collecting and retaining Plaintiff's and the Class Members' biometric information, Antech had no written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric information when the initial purpose for collecting or obtaining such biometric information has been satisfied or within 3 years of the individual's last interaction with Antech, whichever occurs first.

54. Ostensibly, the purpose of Antech's collection of Plaintiff's and the Class Members' thumbprint scans was to verify Plaintiff's and the Class Members' identities for the purpose of punching her in or punching her out of Antech's timekeeping system.

55. As such, Plaintiff's and the Class Members' thumbprint scans should have been permanently destroyed by Antech following each time punch and at the conclusion of Plaintiff's and the Class Members' employment.

56. However, Antech failed to permanently destroy Plaintiff's and the Class Members' thumbprint scans following each time punch or at the conclusion of Plaintiff's and the Class Members' employment.

57. As such, Antech's retention of Plaintiff's and the Class Members' Biometric information was unlawful and in violation of 740 ILCS § 14/15(a).

## COUNT TWO: VIOLATION OF 740 ILCS § 14/15(b)

58. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

59. No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740 ILCS § 14/15(b).

60. Antech did not inform Plaintiff and the Class Members in writing that Antech was collecting or storing their biometric information.

61. In fact, Antech made no mention of biometric information, collection of biometric information, or storage of biometric information.

62. Moreover, Antech did not inform Plaintiff and the Class Members in writing of the specific purpose and length of term for which their biometric information was being collected, stored, and used.

63. Antech collected, stored, and used Plaintiff's and the Class Members' biometric information without ever receiving a written release executed by Plaintiff or the Class Members which would consent to or authorize Antech to do the same.

64. As such, Antech's collection of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(b).

## COUNT THREE: VIOLATION OF 740 ILCS § 14/15(d)

65. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

66. No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

> (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;
>
> (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;
>
> (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or
>
> (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction. 740 ILCS § 14/15(d).

67. Upon information and belief, Antech utilizes numerous third party "Service Providers", all of which have had Plaintiff's and the Class Members' biometric information disclosed, redisclosed or otherwise disseminated to them via their role as Service Providers assisting Antech with its identity verification services.

68. Upon information and belief, the terminal which Antech utilized to collect and store Plaintiff's and the Class Members' biometric information as detailed herein is manufactured and continually serviced by a third-party Service Provider which had access to Plaintiff's and the Class Members' biometric information.

69. Upon information and belief, the collection and storage of Plaintiff's and the Class Members' biometric information was performed using software which is manufactured and continually serviced by a third-party Service Provider which had access to Plaintiff's and the Class Members' biometric information as detailed herein.

70. Upon information and belief, Antech has utilized one or more third-party Service Providers to provide timekeeping and payroll services on Antech's behalf and all such Service Providers had access to Plaintiff's and the Class Members' biometric information as detailed herein.

71. Antech' disclosures, redisclosures, or otherwise disseminating of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(d).

**WHEREFORE**, individually, and on behalf of the Class Members, Plaintiff prays for: (1) certification of this case as a class action pursuant to Fed. R. Civ. P. 23 appointing the undersigned counsel as class counsel; (2) a declaration that Defendant has violated BIPA, 740 ILCS § 14/1 *et seq.*; (3) statutory damages of $5,000.00 for the intentional and reckless violation of BIPA pursuant to 740 ILCS § 14/20(2), or alternatively, statutory damages of $1,000.00 per violation pursuant to

740 ILCS § 14/20(1) in the event the court finds that Defendant's violations of BIPA were negligent; (4) reasonable attorneys' fees and costs and other litigation expense pursuant to 740 ILCS §14/20(3); (5) actual damages; and (6) for any other relief deemed appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

Dated: July 10, 2024　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　By: */s/ Michael L. Fradin*
　　　　　　　　　　　　　　　　　　　　　Michael L. Fradin, Esq.
　　　　　　　　　　　　　　　　　　　　　8401 Crawford Ave. Suite 104
　　　　　　　　　　　　　　　　　　　　　Skokie, IL 60076
　　　　　　　　　　　　　　　　　　　　　Telephone: 847-986-5889
　　　　　　　　　　　　　　　　　　　　　Facsimile: 847-673-1228
　　　　　　　　　　　　　　　　　　　　　Email: mike@fradinlaw.com

　　　　　　　　　　　　　　　　　　　　　By: */s/ James L. Simon*
　　　　　　　　　　　　　　　　　　　　　James L. Simon (*pro hac vice* forthcoming)
　　　　　　　　　　　　　　　　　　　　　11 1/2 N. Franklin Street,
　　　　　　　　　　　　　　　　　　　　　Chagrin Falls, Ohio 44022
　　　　　　　　　　　　　　　　　　　　　Telephone: (216) 816-8696
　　　　　　　　　　　　　　　　　　　　　Email: james@simonsayspay.com